# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

September 22, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**ROBERT L. WELLS,**
**Claimant Below, Petitioner**

vs.)    **No. 16-1216** (BOR Appeal No. 2051431)
(Claim No. 2011012809)

**KROGER LIMITED PARTNERSHIP I,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Robert L. Wells, by Patrick Maroney, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Kroger Limited Partnership I, by Sean Harter, its attorney, filed a timely response.

The issue on appeal is whether a neurosurgical consultation is medically related and reasonably required to treat the October 8, 2010, compensable injury. The claims administrator denied the request for a neurosurgical consultation on August 6, 2015. The Office of Judges affirmed the claims administrator's decision on June 24, 2016. The Board of Review affirmed the Order of the Office of Judges on December 1, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Wells, a department manager for Kroger Limited Partnership I, injured his head, neck, and shoulders at work on October 8, 2010. The exact nature of the injury is not clear from the record. The claims administrator held the claim compensable on October 18, 2010, for a head contusion and a cervical sprain. On December 6, 2010, Mr. Wells underwent MRIs of the thoracic and cervical spine. The thoracic spine MRI revealed a mild rightward curvature, which

1

may be at least partially positional in nature. It also revealed multi-level thoracic spondylosis and Schmorl's node formation with no accompanying spinal canal stenosis or neural foraminal narrowing. There was mild anterior wedging of L1, which may be physiologic or secondary to an old compression deformity. The impression of the cervical spine was straightening/mild reversal of the normal cervical lordosis in the upper to mid cervical spine, multi-level degenerative disc disease, facet hypertrophy, uncovertebral hypertrophy, spinal canal stenosis, and neural foraminal narrowings.

It was noted in his submitted medical history, that Mr. Wells was involved in a motor vehicle accident in 2006 which required extensive medical treatment. A January 4, 2007, MRI report of the cervical spine revealed degenerative disc disease at all levels from C4 through C7. After the compensable injury, Mr. Wells underwent a nerve conduction study interpreted by H.S. Ramesh, M.D., on January 27, 2011. Dr. Ramesh stated that there was electrodiagnostic evidence of mild degree sensory peripheral neuropathy and electrodiagnostic evidence of myopathy, cervical sprain/strain, right shoulder sprain/strain, thoracic sprain/strain, headache, and cervicalgia. There was no electrodiagnostic evidence of carpal tunnel syndrome, ulnar neuropathy, radial neuropathy, or cervical radiculopathy. The recommendation was to continue physical therapy and current medications. On February 14, 2011, Mohamed Fahim, M.D, reviewed Mr. Wells's medical records and recommended the approval of one set of right C5-6 and right C6-7 facet joint medial branch block and one session of right mid thoracic facet joint injection. Based upon the report, the claims administrator granted authorization of one set of right C5-6 and right C6-7 facet joint medial branch blocks and one session of right mid thoracic facet joint injection on February 16, 2011. On February 25, 2011, Mr. Wells returned to work on a full-time basis.

Mr. Wells underwent his approved injection on March 1, 2011. Records from Dynamic Physical Therapy & Hand Center from April of 2011 stated that the recommendation was for treatment twice a week for six visits for the assessment of cervical strain. Based upon the recommendation, the claims administrator authorized six additional physical therapy treatments on April 7, 2011. On April 12, 2011, Dr. Ramesh requested several medications, physical therapy three times a week for two weeks with neck and shoulder protocol, right C5-6 and C6-7 cervical facet joint medial branch block/cervical facet joint injections, and a follow-up in two weeks. Dr. Fahim reviewed the request and found the request for right C5-6 and C6-7 cervical facet joint medial branch block/cervical facet injection and six additional physical therapy sessions unnecessary. The claims administrator denied C5-6 and C6-7 cervical facet joint medial branch block/cervical facet injection and six additional physical therapy sessions on April 20, 2011.

In May 17, 2011, report, Richard Adkins, M.D., opined that the injections and further physical therapy was not needed. On the same day, the claims administrator denied cervical facet injections and six additional physical therapy sessions. On March 31, 2011, Dr. Ramesh examined Mr. Wells and concluded that he required physical therapy three times a week for four weeks with neck and thoracic protocol, the medications Celebrex and Zanaflex, as well as right C5-6 and C6-7 cervical facet joint medial branch block/cervical facet joint injections. He placed Mr. Wells on modified work duty and submitted an authorization request.

2

Marsha Bailey, M.D., performed an independent medical evaluation on June 23, 2011. She stated that treatment with cervical facet joint medial branch blocks and thoracic facet joint injections are aimed solely at treating Mr. Wells's degenerative joint and disc disease, which is part of the normal aging process and unrelated to the compensable injury. She found 0% whole person impairment due to the compensable injury. Dr. Bailey mentioned Mr. Wells's pre-existing degenerative disc disease and his prior injuries and imaging.

On June 27, 2011, Mr. Wells was seen by Dr. Ramesh for a follow-up. The impression was an aggravation of cervical strain/sprain, right shoulder strain/sprain, thoracic strain/sprain, resolving headache, and cervicalgia. Mr. Wells was recommended to continue home exercises and take the medication Lyrica. Dr. Ramesh submitted an authorization request for the medication Lyrica and recommended a follow-up in four weeks. The Office of Judges affirmed the claims administrator's September 1, 2011, decision denying physical therapy and injections, as well as the claims administrator's October 4, 2011, decision denying injections and follow-up office visits on July 19, 2012. The Board of Review affirmed the Order of the Office of Judges on January 20, 2013.

On October 1, 2015, Mr. Wells underwent an independent medical evaluation from Syam Stoll, M.D. Dr. Stoll stated that the only accepted diagnoses for the claim were a head contusion and cervical sprain/strain. He opined that the cervical sprain/strain cannot be included in this claim as valid due to a injury in 2014. Dr. Stoll stated that there were no objective findings at the time of evaluation to support Mr. Wells's subjective complaints. Dr. Stoll said the complaints are due to pre-existing cervical spondylosis and the independent intervening work injury which occurred on December 30, 2014. Dr. Stoll stated that any ongoing current diagnoses and treatments are not related to the compensable injuries of the work-related injury of October 8, 2010, but are due to the pre-existing degenerative conditions in the cervical spine and the recent cervical injury of December 30, 2014. It was noted that Mr. Wells is currently working full-duty. Specifically, Dr. Stoll stated it was his medical opinion that the neurological consultation was not indicated for a cervical sprain/strain injury that occurred five years ago, and any ongoing issues with his cervical spine are due to progression of his pre-existing cervical spondylosis. On December 8, 2015, Mr. Wells underwent an independent medical evaluation by Prasadarao Mukkamala, M.D. Dr. Mukkamala found that Mr. Wells was at maximum medical improvement and did not require a consultation with a neurosurgeon.

On June 24, 2016, the Office of Judges determined that a neurosurgical consultation was not medically related and reasonably required to treat Mr. Wells's compensable injury. The Office of Judges noted that Mr. Wells has been found to be at maximum medical improvement for the compensable head contusion and cervical strain sustained on October 8, 2010. The Office of Judges pointed to West Virginia Code of State Rules § 85-20-35.5 (2006), which states that the estimated duration of care for a cervical strain is one to four weeks, not more than eight weeks. The Office of Judges noted that Mr. Wells was well beyond this guideline. Further, the Office of Judges noted that all of the evaluating physicians of record found that Mr. Wells's neck problems are primarily degenerative in nature. The fact that Mr. Wells had pre-existing degenerative disease of the cervical spine is supported by the January 4, 2007, MRI and the notes

from Dr. Tao dated May 5, 2009. In conclusion, the Office of Judges determined that the requested treatment is not medically related and reasonably required to treat the subject injury. The Board of Review adopted the findings of the Office of Judges and affirmed its Order on December 1, 2016.

After review, we agree with the decision of the Office of Judges as affirmed by the Board of Review. Mr. Wells is well beyond the guidelines set forth in West Virginia Code of State Rules § 85-20, without sufficient justification. Further, Mr. Wells has found to be at maximum medical improvement by all the evaluators or record. In addition, all the physicians of record have agreed that Mr. Wells suffers from extensive pre-existing cervical spine issues, which are causing his need for a neurosurgical consolation.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:  September 22, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum